# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM TENHET | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:17cv143-HSO-JCG |
| | § | |
| STRATEGIC RESTAURANT | § | |
| ACQUISITION COMPANY, LLC, and | § | |
| JOHN AND JANE DOES 1-10 | § | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S [13] MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion for Summary Judgment [13] filed by Defendant Strategic Restaurant Acquisition Company, LLC. Plaintiff William Tenhet has not responded to the Motion, and the time for doing so has passed. After consideration of the Motion on its merits, the related pleadings, the record, and relevant legal authority, the Court finds that Defendant's Motion [13] should denied.

## I. BACKGROUND

A. Factual Background

On the afternoon of June 11, 2014, Plaintiff William Tenhet ("Plaintiff") and his sister went to dine at a Burger King restaurant owned by Defendant Strategic Restaurant Acquisition Company, LLC ("Defendant"), and located in Long Beach, Mississippi. Pl.'s Dep. [14-2] at 64-65; *see also* Compl. [1-2] at 2. Plaintiff claims that as he was walking through the parking lot towards the restaurant, he stepped

1

into an uncovered meter hole, causing him to fall to the concrete and suffer injuries. Pl.'s Dep. [14-2] at 64-68, 76-77; *see also* Compl. [1-2] at 2. According to Plaintiff, the hole was approximately 12- to 18-inches wide and "[a]bout a foot or more" deep. Pl.'s Dep. [14-2] at 73. "And inside the hole was [sic] the remnants of the top that was supposed to be on it." *Id.*

Just prior to the incident, Plaintiff was walking ahead of his sister in the direction of the restaurant. *Id.* at 68. Plaintiff turned to look behind him towards his sister, and as he turned to look in the direction he was walking, "next thing I know I am face first. It was like I stepped off a cliff." *Id.* Plaintiff "wasn't really looking at the ground" while he walked, and he "stepped straight into the hole." *Id.* at 70. Plaintiff testified that when he fell, his head struck the ground, causing him severe injuries and pain. *Id.* at 76-78.

B. <u>Procedural History</u>

On March 22, 2017, Plaintiff filed a Complaint in the Circuit Court of Harrison County, Mississippi, Second Judicial District, advancing claims against Defendant for negligence, negligent supervision/training, negligent infliction of emotional distress, respondeat superior, and res ipsa loquitur. Compl. [1-3] at 3-6. The Complaint alleges that Defendant knew or should have known of the existence of the uncovered meter hole in the restaurant parking lot, which was not open or obvious and which created a hazard to others on the property. *Id.* at 2.

Defendant removed the case to this Court on May 8, 2017, on grounds of diversity jurisdiction. On October 11, 2017, Defendant filed a Motion for Summary

Judgment [13] seeking dismissal of Plaintiff's claims. Defendant argues that Plaintiff "cannot show that the alleged negligence by the Defendant created an unreasonably dangerous condition," precluding Plaintiff's claims as a matter of law. Def.'s Mot. for Summ. J. [13] at 1; Def.'s Mem. [14] at 5-9. Defendant further asserts that the hole was an open and obvious condition that Plaintiff would have noticed and could have easily navigated without injury if he had been watching where he was walking. Def.'s Mem. [14] at 9-10.

Defendant has supplied the Affidavit of Kyle Ehrenreich [14-3], a private investigator. Ehrenreich avers that on September 21, 2017, over three years after Plaintiff's incident, he photographed the meter hole and measured its size with a standard measuring tape. Aff. of Kyle Ehrenreich [14-3] at 1. According to Ehrenreich's measurements, the hole was approximately 11-inches wide and 5.75-inches deep. *Id.* at 2.

Because Plaintiff has not responded to Defendant's Motion for Summary Judgment, the Court considers the Motion on its merits, without the benefit of a Response. *See, e.g., Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995).

## II. DISCUSSION

A. Relevant Legal Standards

1. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any

3

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310-11 (5th Cir. 2017). In order to carry this initial burden, a movant "must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted).

If the movant carries its initial burden, "[t]he burden then shifts to the nonmovant to demonstrate a genuine issue of material fact, but the nonmovant cannot rely on the allegations in the pleadings alone." *Id.* "Instead, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* (quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Savant v. APM Terminals*, 776 F.3d 285, 288 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Id.*

2. Mississippi Premises Liability Law

Defendant does not appear to dispute that Plaintiff enjoyed the status of an

4

invitee at its restaurant. *See* Def.'s Mem. [14] at 5-6 (citing Mississippi premises liability law relevant to invitees).[1] Under Mississippi law, a premises owner is not an insurer of an invitee's safety, but owes to an invitee "a duty of reasonable care, to maintain its premises is [sic] a reasonably safe condition." *Pigg v. Express Hotel Partners, LLC*, 991 So. 2d 1197, 1199 (Miss. 2008).

A premises owner's duty of reasonable care also includes

> not only the duty to keep its premises in a reasonably safe condition, but the duty to warn of any dangerous conditions not readily apparent which the owner knew, or should have known, in the exercise of reasonable care and the duty to conduct reasonable inspections to discover dangerous conditions existing on the premises.

*Id.* at 1199-200 (Miss. 2008) (quotation omitted). An invitee must

> (1) show that some negligent act of the defendant caused his injury; or (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition.

*Grammar v. Dollar*, 911 So. 2d 619, 624 (Miss. Ct. App. 2005).

B. <u>Defendant has not satisfied its initial summary judgment burden.</u>

Defendant cites Mississippi cases addressing uneven municipal sidewalks and seems to suggest that Plaintiff did not exercise ordinary care and did not act as a reasonable person. *See* Def.'s Mem. [14] at 7 (citing *City of Biloxi v. Schambach*, 157 So. 2d 386 (Miss. 1963); *Bond v. City of Long Beach*, 908 So. 2d 879 (Miss. Ct. App. 2005)). Defendant argues that, because Plaintiff failed to watch where he

---

[1] *See, e.g., Corley v. Evans*, 835 So. 2d 30, 37 (Miss. 2003) ("an invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage").

5

was walking prior to his fall in an "open and obvious meter hole," "Defendants [sic] could have done nothing to prevent Plaintiff's fall," *id.* at 9 (citing Pl.'s Dep. [14-2] at 69:22—70:4).[2] According to Defendant, "Mississippi courts have consistently granted summary judgment when plaintiffs injured themselves on similarly-sized obstructions," *id.* at 8,[3] such that the condition in the parking lot in this case was not a dangerous one, *id.* at 9-10.

1. <u>There is a genuine dispute of material fact which precludes summary judgment.</u>

Relying upon Defendant's private investigator's Affidavit alone as to the dimensions of the hole, and citing what it contends is analogous legal authority, Defendant essentially argues that a meter hole in the parking lot, which the

---

[2] This excerpt of Plaintiff's deposition reads as follows:

Q. If you were to walk outside in the parking lot right now, was there any debris at Burger King on the day of the trip and fall that would have blocked your vision?
A. I don't think so. I mean, I wasn't really looking at the ground. I don't stare at the ground when I walk.

Pl.'s Dep. [14-2] at 69:22—70:4.

[3] *See* Def.'s Mem. [14] at 8 (arguing that courts have held the following obstructions were not dangerous conditions: "*Parker v. Wal–Mart Stores Inc.*, 261 Fed. Appx. 724, 726-27 (5th Cir. 2008), **a 3.5-inch wide, 2-inch deep hole**; in *Mack v. Waffle House, Inc.*, No. 1:06CV559, 2007 WL 1153116 (S.D. Miss. Apr. 18, 2007), **a 2-inch wide, 4.75-inch long, .75-inch deep hole**; in *Quick v. Strategic Restaurants Acquisition Co.*, No. 3:12–cv–301, 2013 WL 1305583 (S.D. Miss. Mar. 28, 2013), **a 10-inch wide, 1.5-inch deep hole**; in *Chance v. Wal–Mart East, L.P.*, No. 3:14–cv–363, 2015 WL 4496442 (S.D. Miss. July 23, 2015): **a 1.5-1.75 inch indentation**; in *Eschete v. Jim Wilson & Associates, LLC*, 1:16CV89-HSO-JCG, 2017 WL 445389, at *6 (S.D. Miss. Jan. 31, 2017), *judgment entered*, 1:16CV89-HSO-JCG, 2017 WL 421670 (S.D. Miss. Jan. 31, 2017), **a 6-inch wide, 7-inch deep hole**; and in *Jones v. Wal-Mart Stores E., LP*, 187 So. 3d 1100, 1106 (Miss. App. 2016), **a 4-inch deep, 4-inch wide, 12-inch long hole**.") (emphasis in original).

investigator averred was about an 11-inch-wide and 5.75-inch-deep hole, did not constitute a dangerous condition as a matter of law. Def.'s Mem. [14] at 9; *see also* Aff. of Kyle Ehrenreich [14-3] at 1-2 (delineating measurements taken of meter hole).

Defendant's position, however, neglects to credit Plaintiff's sworn deposition testimony that the hole was actually 12- to 18-inches wide and 12-inches or more deep. *See* Pl.'s Dep. [14-2] at 73. This is demonstrably deeper than any of the holes in the cases referenced by Defendant. *See* Def.'s Mem. [14] at 8. Crediting Plaintiff's sworn testimony, a reasonable jury could find that the hole was not of the type usually or normally encountered by business invitees and constituted a dangerous condition within the meaning of Mississippi premises liability law. *See, e.g., Vivians v. Baptist Healthplex*, No. 2014-CT-01828-SCT, 2017 WL 2813303, at *4 (Miss. June 29, 2017) (finding that a genuine issue of material fact existed with regard to whether steps leading into a therapy pool constituted an unreasonably dangerous condition and whether the defendant negligently failed to repair the steps); *Mayfield v. The Hairbender*, 903 So. 2d 733, 739 (Miss. 2005) (holding that question of whether an owner or occupier of a premises was negligent for failure to repair an alleged dangerous condition is ordinarily for the jury to decide).

Moreover, even if the hole were 11-inches wide and 5.75 inches deep, as Defendant's investigator attests, the Court cannot say that as a matter of law this would not constitute a dangerous condition. Aff. of Kyle Ehrenreich [14-3] at 1-2. Defendant relies upon several cases where the obstructions were significantly less

7

deep than the meter hole in this case. *See* Def.'s Mem. [14] at 8. Many of those cases involved normally-encountered dangers such as curbs, sidewalks, and steps, which often contain cracks, indentations, or changes in elevation that do not transform them into a dangerous condition under controlling Mississippi precedent. *See id.*; *see also Parker v. Wal-Mart Stores, Inc.*, 261 F. App'x 724, 727 (5th Cir. 2008) (a crack in the expansion joint of a curb in a parking lot that was approximately 3 ½-inches wide and 2-inches deep); *Mack v. Waffle House, Inc.*, No. 1:06CV559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (a crack in the sidewalk where the handicap ramp meets the asphalt parking lot approximately 2-inches wide, 4 ¾-inches long, and ¾-inches deep); *Quick v. Strategic Restaurants Acquisition Co.*, No. 3:12cv301-CWR-LRA, 2013 WL 1305583, at *2 (S.D. Miss. Mar. 28, 2013) (a 10-inch-wide and 1.5-inch-deep pothole in parking lot); *Chance v. Wal-Mart East, L.P.*, No. 3:14cv363-WHB-RHW, 2015 WL 4496442 (S.D. Miss. July 23, 2015) (small indentation 1 ½-to 1 ¾-inches deep in the parking lot that had cracks running from it); *Jones v. Wal-Mart Stores E., LP*, 187 So. 3d 1100, 1106 (Miss. App. 2016) (a 4-inch deep, 4-inch wide, 12-inch long crack in parking lot of the sort customers of a business may normally expect to encounter) (emphasis in original). No case cited by Defendant involved an uncovered meter hole.

As for the one case relied upon by Defendant purportedly involving a deeper, 7-inch hole, Defendant misapprehends the holding. Defendant cites *Eschete v. Jim Wilson & Associates, LLC*, 1:16CV89-HSO-JCG, 2017 WL 445389, at *6 (S.D. Miss. Jan. 31, 2017), for the proposition that a 6-inch-wide, 7-inch-deep hole is not a

8

dangerous condition as a matter of law. *See* Def.'s Mem. [14] at 8. However, the Court in that case did not make a finding that a hole of this size was not a dangerous condition as a matter of law. Instead, the Court found no competent summary judgment evidence to support a claim that the hole was in fact as deep as the plaintiff claimed.

In *Eschete*, the amended complaint alleged that the plaintiff fell in a parking lot "into a hole about 6 inches wide, by about 7 inches deep," *Eschete*, 2017 WL 445389, at *1, but the plaintiff did not present any competent summary judgment evidence to support this allegation, *id.* at *5. During her deposition, the plaintiff was unable to describe the characteristics of the hole, including its depth. *Id.* at *1. In contrast, the defendants presented testimony that the area at issue was a minor depression in the surface of the type visitors would expect to see in a parking lot, which the Court determined was consistent with photographs taken after the accident. *Id.* at *2, *6. The Court also agreed that patrons would normally expect to encounter such a depression in a parking lot. In the absence of any countervailing evidence, *Eschete* concluded that a reasonable jury would not have a legally sufficient evidentiary basis to find that the depression in the pavement was a 6-inch-wide and 7-inch-deep hole as Plaintiff had claimed or that it constituted a dangerous condition. *Id.* at *6. The Court did not conclude that an actual hole of such dimensions would not be a dangerous condition as a matter of law. *See id.*

At this juncture of the proceedings in this case, a genuine dispute of material fact exists as to the actual size of the hole in which Plaintiff purportedly fell.

9

Unlike *Eschete,* the summary judgment record here contains Plaintiff's sworn deposition testimony describing the size of the hole. The Court cannot weigh competing evidence or make credibility determinations at the summary judgment stage. *See Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017).

Viewing the facts and drawing reasonable inferences in the light most favorable to Plaintiff as the nonmoving party, the record reflects that the hole may have been significantly wider and deeper than Defendant's witness posits, and larger than the holes in the cases cited by Defendant. *See* Pl.'s Dep. [14-2] at 73. A reasonable fact finder could find that an uncovered meter hole in the restaurant parking lot, of the dimensions related by Plaintiff, constituted a dangerous condition under Mississippi law. For this reason, Defendant has not carried its initial summary judgment burden of demonstrating the absence of a genuine dispute of material fact or that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

2. <u>Defendant's asserted open-and-obvious defense does not operate as a complete bar to liability.</u>

Defendant also raises an argument akin to an open-and-obvious defense. In *Tharp v. Bunge Corporation,* 641 So. 2d 20 (Miss. 1994), the Mississippi Supreme Court abolished the open-and-obvious theory as an absolute defense in premises liability cases. *Mayfield v. The Hairbender*, 903 So. 2d 733, 737 (Miss. 2005) (citing *Tharp*, 641 So. 2d at 25). Instead, this theory is now a comparative negligence defense. *Id.*

10

*Tharp* extends to cases "in which the plaintiff alleges the defendant was negligent in creating or failing to repair a dangerous condition, and the defendant alleges the dangerous condition was open and obvious." *Id.* Where a plaintiff alleges that a defendant failed to warn of a dangerous condition, the Mississippi Supreme Court has noted that "it would be strange logic that found it reasonable to allow a plaintiff to pursue a claim against a defendant for failure to warn of an open and obvious danger." *Vaughn v. Ambrosino*, 883 So. 2d 1167, 1170 (Miss. 2004). If a dangerous condition is determined to be open and obvious, "the business owner has no duty to warn customers of its existence, but 'it does not eliminate the [owner's] duty to maintain the premises in a *reasonably* safe condition.'" *Jones v. Wal-Mart Stores E., LP*, 187 So. 3d 1100, 1104 (Miss. Ct. App. 2016) (quoting *Mayfield*, 903 So. 2d at 739 (emphasis in original)).

Regardless of whether the hole in question here constituted an open and obvious condition, Defendant still owed a duty to maintain the restaurant premises in a reasonably safe condition. *See id.* Because the Court has determined that a fact question precludes summary judgment on the issue of whether the premises was reasonably safe, to the extent that Defendant seeks summary judgment based upon an open-and-obvious defense this request will be denied. *See id.*

### III. CONCLUSION

Because Defendant has not carried its initial summary judgment burden, its Motion for Summary Judgment should be denied.

11

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion for Summary Judgment [13] filed by Defendant Strategic Restaurant Acquisition Company, LLC is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 20th day of December, 2017.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE